UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the September 17, 2011 "Star Power": Mayweather/Ortiz Fight Program, <br><br> Plaintiff, <br><br> v. <br><br> 1) MORELIA MEXICAN RESTAURANT, INC., individually and d/b/a MORELIA, d/b/a MORELIA MEXICAN RESTAURANT, d/b/a MORELIA MEXICAN RESTAURANT & CLUB; <br> 2) SANTOS LOZANO, individually and d/b/a MORELIA, d/b/a MORELIA MEXICAN RESTAURANT, d/b/a MORELIA MEXICAN RESTAURANT & CLUB; and <br> 3) BRAULIO LOZANO, individually and d/b/a MORELIA, d/b/a MORELIA MEXICAN RESTAURANT, d/b/a MORELIA MEXICAN RESTAURANT & CLUB, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:14-CV-3374-B |

MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Final Default Judgment (doc. 8), filed by Plaintiff J&J Sports

Productions, Inc. on April 3, 2015. Plaintiff seeks a default judgment on its claims against

Defendants Morelia Mexican Restaurant Inc., Santos Lozano, and Braulio Lozano.[1] For the reasons

_____

[1] Specifically, Defendants are identified as follows: Morelia Mexican Restaurant, Inc., individually and d/b/a Morelia, d/b/a Morelia Mexican Restaurant, d/b/a Morelia Mexican Restaurant & Club; Santos

that follow, the Motion is **GRANTED in part** and **DENIED in part.**

**I.**

**BACKGROUND**

This case involves claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (the "FCA"). Plaintiff J&J Sports Productions, Inc. markets and licenses closed-circuit, pay-per-view prizefighting events to be viewed at commercial establishments. Doc. 8-1, Pl.'s Ex. A, Affidavit of Thomas P. Riley ("Riley Aff."), App. 5–6. Plaintiff acquired the proprietary rights to exhibit and sublicense the right to exhibit the September 17, 2011 broadcast entitled "Star Power:" Floyd Mayweather, Jr. v. Victor Ortiz Championship Fight Program, including undercard or preliminary bouts (the "Event"). Doc. 1, Compl. ¶¶ 1, 7. Plaintiff marketed and distributed exhibition rights to the Event to commercial locations throughout Texas in exchange for a fee. *Id.* at ¶¶ 7, 9. To prevent unlicensed establishments from exhibiting the Event, the transmission was electronically coded or "scrambled," and establishments that had obtained the necessary license to broadcast the Event were provided with electronic decoding equipment. *Id.* at ¶¶ 10–12. Plaintiff alleges that Defendants did not contract to obtain the rights to broadcast the Event. *Id.* at ¶¶ 13, 17. According to Plaintiff, Defendants nonetheless broadcasted the Event to patrons of their establishment, Morelia's Mexican Restaurant, on September 17, 2011. *Id.* at ¶ 13.

Plaintiff filed the present case on September 17, 2014, asserting that Defendants willfully violated the FCA for commercial gain. *Id.* at ¶¶ 13–17. Plaintiff thus maintains that it is entitled to

---

Lozano, individually and d/b/a Morelia, d/b/a Morelia Mexican Restaurant, d/b/a Morelia Mexican Restaurant & Club; and Braulio Lozano, individually and d/b/a Morelia, d/b/a Morelia Mexican Restaurant, d/b/a Morelia Mexican Restaurant & Club.

an award of statutory and additional damages pursuant to the FCA, a permanent injunction

enjoining Defendants from intercepting or exhibiting future programs without a license to do so, as

well as court costs, attorney's fees, and pre- and post-judgment interest. *Id.* at 5–6.

Defendants were served with process on October 8, 2014, but did not answer or otherwise

respond by the appropriate deadline. Doc. 5, Affidavit of Service. On March 27, 2015, the Court

noted that no activity had occurred in the case since its filing, and accordingly informed Plaintiff

that, unless it moved for default judgment, the case would be dismissed. Doc. 6, Order. Pursuant to

the Court's order, Plaintiff requested an entry of default as to Defendants on April 3, 2015, which

the Clerk of Court entered the same day. Docs. 7, Request for Clerk to Issue Entry of Default; 9,

Entry of Default. Also on April 3, 2015, Plaintiff filed the present Motion for Final Default Judgment

(doc. 8) against Defendants. To date, Defendants have not made an appearance in this case.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to

enter a default judgment against a defendant who has failed to plead or otherwise defend upon

motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic

remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun

Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not

entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*,

75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the

discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548

F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4 ]whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, courts are to assume, that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and

supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

A.     *Whether the Entry of Default Judgment Is Appropriate*

After reviewing Plaintiff's Motion in light of the six *Lindsey* factors, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Indeed, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Moreover, Defendants' failure to respond to Plaintiff's Complaint or otherwise appear in this case for the past ten months "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013); *see also Elite v. KNR Group*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining that failure to appear was due to financial privation). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants.

B.        *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendants are deemed to have admitted the allegations set

forth in Plaintiff's Complaint. Nonetheless, the Court must review the pleadings to determine

whether they present a sufficient basis for Plaintiff's claim for relief. *Nishimatsu Constr.*, 515 F.2d at

1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim
> showing that the pleader is entitled to relief." The purpose of this requirement is "to
> 'give the defendant fair notice of what the . . . claim is and the grounds upon which
> it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.
> Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only
> "be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*
> (footnote and citations omitted). "[D]etailed factual allegations" are not required,
> but the pleading must present "more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Plaintiff alleges that Defendants "willfully intercepted and/or received the interstate

communication of the Event," or, alternatively, "assisted in the receipt of the interstate

communication of the Event." Compl. ¶ 13. Plaintiff then avers that Defendants "transmitted,

divulged and published [the Event] . . . to patrons within [Defendants' establishment]." *Id.*

Moreover, Defendants allegedly "infringed upon Plaintiff's exclusive rights" to broadcast the Event

"willfully and with the express purpose and intent to secure a commercial advantage and private

financial gain." *Id.* at ¶ 14. Plaintiff insists that through these acts, Defendants violated 47 U.S.C.

§§ 553 and 605. *Id.* at ¶¶ 18–19.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . or

receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such

communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C.

§ 605(a). Similarly, one violates 47 U.S.C. § 553 by "intercept[ing] and receiv[ing] or assist[ing] in

intercepting or receiving any communications service offered over a cable system" without

authorization. *Id.* § 553(a)(1). The unauthorized interception of satellite or cable transmissions

violates both Sections 553 and 605. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774

(S.D. Tex. 2002). Here, Plaintiff's Complaint indicates that the Event was transmitted via an

"electronically coded or 'scrambled'" satellite signal, and that Defendants intercepted the Event

without authorization, exhibiting it to patrons of their establishment for their own commercial

benefit. Compl. ¶¶ 10–17. After review, the Court concludes that these allegations state a viable

claim for relief and are sufficient to provide Defendants with "fair notice" of Plaintiff's claim that

Defendants "transmitted, divulged and published [the Event] . . . to patrons within [Defendants'

establishment]" in violation of the FCA.

C.      *Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the

defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson

v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002)). Damages must be proven by a hearing or

a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605

F.2d at 857. If the amount of damages can be determined with mathematical calculation by reference

to the pleadings and supporting documents, a hearing is unnecessary. *James*, 6 F.3d at 370.

A party aggrieved by a violation of Section 605 may elect to receive either actual damages

or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages for each violation of the

section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court

finds just. *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and

for purposes of direct or indirect commercial advantage or private financial gain," it may, in its

discretion, increase the damage awarded by an amount of not more than $100,000. *Id.* § 605(e)

(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's

fees. *Id.* § 605(e)(3)(B)(iii).

 1.     Statutory Damages

Plaintiff maintains that "it would be impossible to determine the full extent of the profits" it

lost and "the additional damages sustained . . . as a result of Defendants' unlawful actions." Doc. 8,

Pl.'s Mot. for Final Default J. ("Pl.'s Mot.") 5. Thus, Plaintiff requests statutory rather than actual

damages, seeking an award of $10,000—the statutory maximum—against Defendants.[2] *Id.* at 4–5.

Plaintiff specifies that Defendants' actions have led it to lose revenue and have deprived it of the

"'value, benefits and profits derived' from the unauthorized broadcast of the Event . . . as well as the

value of 'business investment, business opportunities and goodwill.'" *Id.* at 5 (quoting *Am. Television*

*& Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla.1986)). In support of its

request for damages, Plaintiff presents the affidavit of Thomas P. Riley, whose firm was charged with

"the discovery, investigation and prosecution of claims arising from the theft or piracy of . . . [the

Event]." Pl.'s Ex. A, Riley Aff., App. 5. In his affidavit, Riley avers that Defendants' actions threaten

the existing and ongoing viability of Plaintiff's company. *Id.* at App. 7–9. By broadcasting

---

 [2] The Court notes that Plaintiff cannot recover under both Sections 553 and 605, even if it can be
demonstrated that Defendants violated both. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. Therefore, the inquiry
as to damages will only be based on a discussion of Section 605, as it allows Plaintiff a greater recovery. *Id.*

programming without complying with the required licensing process, establishments like Defendants' are able to charge their patrons no fee or a fee less than what authorized establishments are required to charge. *Id.* at App. 8–9. Thus, establishments that lawfully broadcast programs lose business and patrons and, as a result, lose the ability to contract with Plaintiff in order to obtain licenses to broadcasts. *Id.* In sum, Plaintiff alleges that Defendants' actions caused it to suffer damage to its goodwill, reputation, and right and ability to control and receive fees for the transmission of programs. *Id.*

Courts have assessed various amounts in statutory damages for violations similar to those presented here. *See Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (awarding base statutory damages in the amount of $10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (awarding base statutory damages in the amount of $5,000). In light of the need to deter future violations, and considering the fact that the sublicensing fee here would have been approximately $2,200 had Defendants paid to lawfully broadcast the Event, the Court finds statutory damages in the amount of $5,000 to be reasonable. *See* Pl.'s Ex. A-3, Rate Card; *see, e.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA]."). The Court therefore **GRANTS** Plaintiff's request for statutory damages and awards Plaintiff the sum of $5,000.

2.    Additional Damages

Plaintiff further requests $50,000 in additional damages pursuant to 47 U.S.C. §
605(e)(3)(C)(ii) based on its allegation that Defendants' actions "were willful and 'for purposes of
direct or indirect commercial advantage or private financial gain.'" Pl.'s Mot. 6, 9. Plaintiff does not
present evidence to demonstrate that Defendants willfully violated the FCA, but it insists that
Defendants could not have "innocently" accessed the broadcast of the Event given the complexity
of intercepting transmissions. *Id.* at 7. Courts have generally found this reasoning to be persuasive
given the limited means by which defendants can access closed-circuit, pay-per-view events and the
unlikelihood that an establishment could intercept such broadcasts by chance. *See Al-Waha Enters.*,
219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit
broadcasting of pay-per-view events" and "the low probability that a commercial establishment could
intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time
Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be
no doubt that the violations were willful and committed for purposes of commercial advantage and
private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to
cable distribution systems.")). Based on this line of cases, the Court likewise concludes that the
evidence and allegations presented by Plaintiff are sufficient to support a finding of willfulness.

Moreover, the record indicates that Defendants exhibited the Event for purposes of direct
or indirect commercial gain. As Plaintiff alleges, and as demonstrated by evidence of the auditing
visit during which the violation was observed, Defendants advertised the showing of the Event;
charged a $10 cover to view the Event; broadcasted the Event on five televisions, one of which was

- 10 -

a large-screen television; and sold food and beverages to the sixty patrons that were present at the establishment. Pl.'s Mot. 8–9; Pl.'s Ex A-2, Affidavit, App. 19–22. Courts have found such facts persuasive in establishing a commercial motive. *See J & J Sports Prods., Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at \*4 (S.D. Tex. Aug. 14, 2009) ("Defendant openly advertised the Event on a marquee outside its establishment which serves as evidence that the Event was shown for the purpose of commercial advantage or private financial gains."); *Garden City Boxing Club, Inc. v. Sacks*, No. B-07-97, 2008 WL 1711478, at \*2 (S.D. Tex. Apr. 10, 2008) ("The Event was rebroadcast to the bar's customers who paid a twenty dollar ($20) cover charge; therefore, this act of cable piracy was for the purpose of direct or indirect commercial advantage."); *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) ("In determining the amount of an award for willfulness damages, . . . courts have considered such factors as the number of televisions on which defendants broadcast the Event . . . ."); *Beck*, 2013 WL 5592333, at \*2 (finding commercial motive based on the fact that "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity."). This Court similarly finds sufficient evidence and allegations to establish Defendants' motive.

The FCA allows "the court, in its discretion," to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii). However, courts have varied in their approaches to determining the proper amount to award in cases similar to the present one. *See, e.g., Alima*, 2014 WL 1632158, at \*5 (awarding additional damages in the amount of four times the statutory base award where defendant charged

a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding additional damages in the amount of five times the statutory base award, citing the location of the broadcast in an urban area and the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding additional damages in the amount of three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding triple damages for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Plaintiff provides evidence of the auditing visit during which Defendants' violation was observed. Pl.'s Ex. A-2, Affidavit App. 19–22. The evidence demonstrates that Defendants' establishment advertised the event through posters displayed on the exterior of the building; charged a $10 cover to view the Event; broadcasted the Event on five televisions, one of which was a large-screen television; sold food and beverages; and broadcasted the Event to approximately sixty patrons at the establishment. *Id.* Based on the damages awarded by other courts faced with similar circumstances, the evidence currently before the Court, and the need to deter future violations, the Court finds that additional damages in the amount of four times the statutory damages to be reasonable. Thus, the Court **GRANTS** Plaintiff's request for additional damages and awards Plaintiff the sum of $20,000.

3.    Attorney's Fees and Costs

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks a one-third

contingent fee or, alternatively, attorney's fees in the amount of $1,000. Pl.'s Mot. 10; Pl.'s Ex. B,

Affidavit of David M. Diaz ("Diaz Aff."), App. 27–30. Plaintiff presents the affidavit of its counsel,

David M. Diaz, in which he estimates his fee to be $1,000 for his time and work on this case. Pl.'s

Ex. B, Diaz Aff., App. 29–30. This sum is based on a rate of $250 per hour and approximately four

hours of work. *Id.* Given this estimate, as well as the evidence and circumstances of the case, the

Court finds Plaintiff's request for $1,000 in attorney's fees to be more reasonable than a one-third

contingency fee.

The Fifth Circuit has described the procedure and standard for determining attorney's fees

as follows:

> The determination of a fees award is a two-step process. First the
> court calculates the "lodestar" which is equal to the number of hours
> reasonably expended multiplied by the prevailing hourly rate in the
> community for similar work. The court should exclude all time that
> is excessive, duplicative, or inadequately documented. Once the
> lodestar amount is calculated, the court can adjust it based on the
> twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*,
> 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d

372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation;

(2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services

properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or

contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the

result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the

case; (11) nature and length of the professional relationship with the client; and (12) awards in

similar cases. 488 F.2d at 717–19.

Although Plaintiff has not offered invoices or other evidence supporting the number of hours its attorney worked on this case, the Court accepts as reasonable Mr. Diaz's estimate of his time and rates given his experience with anti-piracy cases as well as the authorities he provides. Pl.'s Exs. B, Diaz Aff., App. 26–28; B-2, Texas Lawyer's Annual Salary & Billing Report, App. 39–46. Accordingly, the Court makes no adjustment to these figures and **GRANTS** Plaintiff's request for $1,000 in attorney's fees.[3]

With respect to costs, which Plaintiff is entitled to recover pursuant to this action, the Court observes that Plaintiff has neglected to specify the amount of costs it seeks to recover. Moreover, Plaintiff does not provide any evidence establishing the costs it has incurred. As the Court is unable to determine the sum of the costs sought or the manner in which such a sum can be computed, it **DENIES** Plaintiff's request for costs at this time. Plaintiff may, however, provide supplementary briefing and evidence establishing the amount of costs it seeks.

4.      Permanent Injunction

Lastly, Plaintiff requests a permanent injunction against Defendants to prevent them "from ever intercepting or exhibiting an unauthorized program in violation of the [FCA]." Pl.'s Mot. 10. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). However, Plaintiff provides

---

[3] In its proposed order, Plaintiff also includes several conditional grants of attorney's fees for potential post-judgment and appellate work. Doc. 8-2, Proposed Order 2. Although Plaintiff does not expound upon this request in its Motion, the affidavit of its counsel, David Diaz, lists various requests for fees that are contingent upon the occurrence of post-judgment events. *See* Pl.'s Ex. B, Diaz. Aff., App. 31–32. For example, Plaintiff seeks a conditional award of $10,000 to be granted should Defendants file a "post-judgment, pre-appeal motion," such as a motion to vacate. *Id.* Because this Court has granted reasonable attorney's fees for the work actually performed, and because Plaintiff has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court denies this request.

no explanation supporting its request for such relief. Additionally, the Court finds such an injunction

is unnecessary to the extent it is merely intended to prevent Defendants from violating the FCA. The

Court therefore **DENIES** Plaintiff's request for a permanent injunction.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's

Motion for Final Default Judgment (doc. 8). In particular, the Court:

- **GRANTS** Plaintiff's requests for statutory damages in the amount of $5,000 and for

    additional damages in the amount of $20,000, for a total award of $25,000;

- **GRANTS** Plaintiff's request for attorney's fees in the amount of $1,000;

- **DENIES** Plaintiff's request for costs of court, pending supplementation of the record;

- **GRANTS** Plaintiff's request for post-judgment interest at the rate of 0.39% on all

    amounts awarded herein; and

- **DENIES** Plaintiff's request for a permanent injunction.

If Plaintiff is able to provide supplementary briefing and evidence in support of its request for

court costs, it is **ORDERED** to do so by **September 25, 2015.**

**SO ORDERED.**

**SIGNED: August 28, 2015.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE